## A. J. Poteet v. State.

No. 2230. Decided February 5, 1913.

Rehearing denied February 26, 1913.

**1.—Embezzlement—Indictment—Description of Money.**

Where, upon trial of embezzlement, the indictment followed approved precedent and properly described the money embezzled, there was no error in overruling a motion to quash.

**2.—Same—Charge of Court—Venue.**

Where, upon trial of embezzlement, the court's charge specifically required the jury to believe beyond a reasonable doubt that the defendant fraudulently embezzled the alleged money in the county of the prosecution, the same was sufficient.

**3.—Same—Jurisdiction—Statutes Construed.**

Under Article 251, Code Criminal Procedure, where the defendant received the alleged embezzled money in the county of the prosecution, the jurisdiction of the court was sustained.

**4.—Same—Case Stated—Jurisdiction—Venue.**

Where, upon trial of embezzlement, the evidence showed that by agreement between the defendant and the prosecutor, the defendant drew on the prosecutor for the amount of the alleged embezzled money through a bank in the county of the prosecution to which the prosecutor paid the money after receiving a letter from the defendant directing him to do so, and that in fact and in law the defendant received said money in the county of the prosecution, although he was at the time in another county, the jurisdiction of the offense properly attached to the county of the prosecution.

**5.—Same—Partnership—Charge of Court.**

Where, upon trial of embezzlement, there was slight evidence of partnership between defendant and prosecutor and the court submitted the issue to the jury, who found adversely to defendant thereon, there was no error.

**6.—Same—Charge of Court—Practice on Appeal.**

Where no reason is given in the requested charge itself why it should have been submitted and no such reason was set up in the motion for new trial, the same will not be considered on appeal; besides, the evidence did not raise the issue submitted in the requested charge.

**7.—Same—Misconduct of Jury—Presumption.**

Where the question of the misconduct of the jury was examined into by the trial court and decided adversely to defendant, and there appeared in the record on appeal no evidence, the presumption is that the trial court correctly ruled thereon.

Appeal from the District Court of Atascosa. Tried below before the Hon. E. A. Stevens.

Appeal from a conviction of embezzlement; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

W. W. *Walling,* for appellant.—On question of venue and jurisdiction: Cole v. State, 16 Texas Crim. App., 461; Reed v. State, 16 id, 586; Kinman v. State, 39 S. W. Rep., 574; Strickland v. State, 13 S. W. Rep., 865; Ballow v. State, 58 S. W. Rep., 1023; Yost v. State, 38 S. W. Rep., 192; Brown v. State, 4 S. W. Rep., 538.

C. E. *Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of embezzlement and given the lowest term, two years, in the penitentiary.

It happens the statement of facts in this case is short. It in substance is, that on and prior to February, 1910, appellant and John Lowe had been partners in some cattle business. While thus interested they bought thirty-two head somewhere in eastern Texas and had left them there. Early in February appellant told Lowe he was going to eastern Texas to see about these thirty-two head of cattle and that he might buy some jerseys there. He also told Lowe that he was going to buy some lumber there for himself and suggested to Lowe, that he, Lowe, had better have him (appellant) to buy some lumber for him, Lowe, while he was on this trip. Thereupon, after talking the matter over with appellant, Lowe arranged to have appellant buy $1,000 worth of lumber for him while in eastern Texas and Lowe made arrangements with the bank at Jourdanton, the county seat of Atascosa County, to raise this thousand dollars and to let appellant have it, and which was arranged at the time to be used in the payment of the lumber in case appellant bought the same for Lowe while he was in eastern Texas. Lowe testified that at that time he authorized appellant, as his agent, to buy the lumber for him, Lowe, and when the purchase was made to draw on him, Lowe, or the bank for the amount of the purchase. Both of these parties lived in Atascosa County and all this arrangement was made between them while they were in Atascosa County, and by this arrangement between them the money was to be paid by Lowe in Atascosa County.

It seems that appellant then went to Center in Shelby County, Texas, and on February 11, 1910, drew this order or check:

"Jourdanton, Texas, Feb. 11th, 1910.
"No. ......
"Pay to the order of Farmers National Bank Center, Texas, $1,000, One Thousand Dollars.
                                        "A. J. Poteet."

This check or order was indorsed as such matters usually are, by the Center bank: "Pay to the order of any bank, banker or trust company. All prior endorsements guaranteed." This first indorsement is not dated. The next indorsement is: "Pay to the order of any bank, banker or trust company. Feb. 12, 1910." Signed by the Citizens Bank & Trust Company, Austin, Texas. The next indorse-

ment is substantially the same as the first above, signed by the Union Bank & Trust Company, Houston, Texas, and dated Feb. 17, 1910.

This check or order was received by the bank at Jourdanton from said Houston bank about Feb. 19, 1910. Prior to the arrival of this check or order, Lowe informed the bank that he had made arrangements with appellant whereby he was to let appellant have the thousand dollars to buy lumber for him, Lowe, and the bank was to take care of the check or order and charge the same to Lowe. That when the check or order arrived the banker at Jourdanton sent for Lowe. Lowe went in and after talking the matter over, Lowe himself indorsed the check and had the bank to pay it for him and the bank did pay it, stamping it paid with the regular stencil stamp of the Jourdanton bank on April 19, 1910. On February 23, 1910, appellant wrote and Lowe received from him a few days later, the following letter:

"Center, Texas, Feb. 23rd, '10.

"Mr. John Lowe,
"Friend John:

"I am doing everything I can to rush things, but the mill is overrun with orders for lumber and I have to wait for the dry kyln to dry it and I will get there all O. K. I am going out to a big shingle mill this Eve to contract one car of shingles will ship just as soon as I can. And it rains so here they can't haul the lumber. It has been raining for four days and just before we had a big snow so that the roads are almost impassable and it looks like snow again. I drawed a check on Jourdanton, but have not heard from it, and if anything has happened you see to it and send it at once. I will write you in the morning, tell you when they can ship the shingles.

"Jack Poteet."

It was after the receipt of this letter by Lowe that he indorsed personally the said check or order drawn by appellant and the bank then paid the money on the check or order.

The evidence shows that the arrangements then made at the Jourdanton bank in Atascosa County for the payment of this money by Lowe and its payment, were made at Jourdanton in Atascosa County.

Lowe never gave appellant his consent to use the said money for any other purpose than to buy lumber for him, Lowe; that the said amount, one thousand dollars, was appropriated by apellant to his own use and without the consent of said Lowe.

After making various inquiries and failing to receive the lumber or to hear from appellant in any way, Lowe went to East Texas, and made an investigation as to the whereabouts of appellant. It seems Lowe thought he had made away with, or had been drowned, and dragged the lakes and offered five hundred dollars reward for the body of appellant. Lowe never saw appellant from the time he left Atascosa County to go to East Texas early in February, 1910, until appellant returned to Atascosa County, more than a year afterwards.

As soon as appellant returned to Atascosa County and Lowe saw him he, in Atascosa County, demanded of appellant the return of his money, but appellant never paid him one dollar.

Appellant, at the time of these transactions, himself had Seven Hundred and twenty-three dollars in said Jourdanton bank. Five Hundred Dollars of this Seven Hundred and Twenty-three dollars was used in payment of a note due said bank by appellant and the balance was paid to appellant's wife. Appellant, by his witnesses showed that while appellant was thus away, the witnesses thought he was dead and that his wife was in mourning for him.

It was also shown that the sheriff of Atascosa County had capiases for the arrest of appellant for more than a year before appellant's return, and, although he tried, could not locate him and did not arrest him; that after he had been away more than a year, he voluntarily returned to Atascosa County when he voluntarily surrendered.

The indictment charged that appellant was on or about February 23, 1910, in Atascosa County, Texas, was the agent of John Lowe and that as such agent he did then and there unlawfully and fraudulently embezzle and fraudulently misapply and convert to his own use, without the consent of said Lowe, One Thousand Dollars current of the United States of America and of the value of One Thousand Dollars, then and there the corporeal personal property of and belonging to said Lowe, which had theretofore come into the possession and was under the care of said appellant by virtue of his said agency. Appellant made a motion to quash this indictment because it "charges no offense against the laws of this State." How or why, is not disclosed in the motion, but the ground stated in the motion for new trial is that the indictment does not state "whether it was money or merchandise." The court correctly overruled this motion to quash.

The court gave a correct charge in the case and required the jury to believe the requisites of the offense of embezzlement in this case before they could find the appellant guilty. And the charge specifically required the jury to believe beyond a reasonable doubt that appellant in the county of Atascosa and State of Texas, as alleged in the indictment, unlawfully and fraudulently embezzled and fraudulently misapplied and converted to his own use the said One Thousand Dollars without the consent of said Lowe, thereby clearly and affirmatively requiring that the jury should believe that the offense was committed in Atascosa County before they could find the appellant guilty.

The most material contention of appellant in this case is that the District Court of Atascosa County did not have jurisdiction to indict and try appellant, claiming the offense was not committed in that county. Article 251 Code Criminal Procedure is: "The offense of embezzlement may be prosecuted in any county in which the offender may have taken or received the property, or through or into which he may have undertaken to transport it." Then, the question is

whether or not the evidence shows that appellant received the money in Atascosa County or took it into said county?

This court, through Presiding Judge Davidson, in Pearce v. State, 50 Texas Crim. Rep., 507, in discussing Article 251, above quoted, among other things, held: "There can be no substantial difference in the construction of statutes in regard to civil and criminal cases, in regard to venue, unless those statutes expressly have different provisions. But where they are substantially the same in regard to conferring authority upon the different counties to entertain such venue or jurisdiction, the construction will be the same in both civil and criminal. It does not require authority to support the proposition in regard to civil cases. They are numerous in this State."

In the case of Cohen v. State, 20 Texas Crim. App., 224, the facts were stated to be that Cohen was employed by a certain firm in Galveston as a drummer to sell their goods. In order to fit him up to do this they selected a large amount of their goods as samples and packed them in trunks. Cohen was in and out of the store and examined these samples as they were being selected and packed. After the trunks were thus packed one member of the firm took the trunks to the depot of one of the railroads, had them checked to Luling in Caldwell County, where they were to be shipped and there actually delivered to Cohen. The firm then delivered to Cohen in Galveston the checks for said trunks. The samples and trunks themselves were not actually received by him until after they reached Luling where he, for the first time, took actual possession of them. He then took them from Luling to Laredo and sold and thereby embezzled the said goods. He was indicted, tried and convicted in Galveston County. He contended that Galveston County had no jurisdiction, but that Caldwell and the counties through which he took the goods after the actual receipt thereof, alone had jurisdiction. In this question the court held:

"There can be no question, in our opinion, that defendant's possession and control of the goods was complete, under the circumstances stated, in Galveston County. By selling the checks for the trunks to a third party in Galveston he certainly could have transferred the title and right to said third party to receive and demand possession of them at Luling; and we imagine that the checks would have entitled him to demand possession of the trunks in Galveston before they were shipped to Luling. We are of opinion the venue of the offense was properly laid in Galveston County. The property came into his possession in Galveston County as agent of the firm. (Penal Code, art. 786; Cole v. The State, 16 Texas Crim. App., 461.) Under the facts stated, appellant could have been tried for embezzlement in Galveston County, or 'in any county in which he may have taken or received the property, or through or into which he may have undertaken to transport it.' (Code Crim. Proc., art. 219; Reed v. The State 16 Texas Crim. App., 586; 62 Cal. 139.)"

In Brown v. State, 23 Texas Crim. App., 214, it was shown that Moss employed Brown to travel over the country and sell and put up lightning rods for him. Moss fitted him up with a wagon and materials and sent him out under his employment. They were in Bosque County when this trade was made and when Moss fitted Brown up for selling and putting up lightning rods for him. Brown went into Robertson County, made a sale and put up rods for a party in Robertson County and there received $62 in cash therefor. Some trouble arose between Moss and Brown and Moss ordered Brown back to Bosque County where Brown went. When Brown got back to Moss in Bosque County the next day, Moss called on him for a settlement and he denied to Moss that he had collected any money from anyone. This was in Bosque County. Brown was indicted in Bosque County for the embezzlement of this money. He contended that Bosque County had no jurisdiction. The testimony tended to show that when Brown left Robertson County upon being called back by Moss, he took this $62 with him and the evidence also tended to show that he carried the $62 into Bosque County. The court held that the evidence was sufficient to show that he did carry this money into Bosque County and that that gave Bosque County jurisdiction, but did not base the affirmance of the case on that fact alone, but said: "If, however, there should be error in this view of the question, there is another view of it which, in our opinion, fixes the venue beyond any doubt in Bosque County. It was in Bosque County that it first appeared that the defendant had embezzled the money. He there denied that he had received it. He may not have conceived the fraudulent intent of appropriating it to his own use until the very moment when he denied having received it. At common law, and without reference to our statute, while it does not embrace, does not exclude, jurisdiction in such case. (2 Russell on Crimes, 9 Am. ed., 470, 471; 1 Bish. Crim. Prac., secs. 41, 61, and note; 2 Bish. Crim. Prac., 326)."

We think these cases are decisive of the question of jurisdiction against appellant in this case. Both Lowe and appellant lived in Atascosa County. In that county they made the trade and agreement whereby appellant was to purchase for Lowe in Eastern Texas, lumber, etc., and ship it from there to Atascosa County, and in that county they made the arrangements whereby Lowe was to there raise and there pay to appellant said money upon apellant purchasing and shipping to him, said lumber. Appellant falsely represented in a letter to Lowe, which was delivered to and received by Lowe in Atascosa County, that he had purchased and would ship to him this thousand dollar's worth of lumber and drew a check or order on the Jourdanton bank for the thousand dollars which, strictly in accordance with their previous arrangements and agreement, Lowe paid to the bank for appellant in Atascosa County. The facts show that in law and in fact, appellant, in the manner detailed, received from

Lowe in Atascosa County, the said thousand dollars, as directed by appellant in his said letter to Lowe. Again, as soon as appellant returned to Atascosa County, the first time Lowe saw him there, Lowe demanded of him the payment of the said thousand dollars which he had received, but appellant did not then or at any other time pay the same or any part thereof. We are clearly of the opinion, under the law and facts of this case, that Atascosa County had jurisdiction of this offense.

Appellant introduced some evidence which may have tended to show that he and Lowe were partners in the lumber business and that the said thousand dollars so furnished and paid by Lowe to him was for their partnership business. The court fully and correctly submitted this question to the jury and they found against appellant. We doubt if the evidence required any such submission, but as it was done, at appellant's instance, he can not complain.

Complaint is made that the court refused a charge by appellant to the effect that if appellant drew said check on his own account on the said Atascosa County bank in Jourdanton, and that he had an account with said bank at the time and Lowe indorsed said check at the instance of the bank and then the money was paid out of Lowe's money, that this created merely a civil liability of appellant to Lowe for the money so paid. No reason whatever is given in the charge itself why it should be given and it was complained of in such a general way in the motion for new trial as not to require this court to consider it. Byrd v. State, 151 S. W. Rep., 1068 and cases there cited. Even if we could consider this question, in our opinion, the evidence does not raise it sufficiently to require the court to have given it. The facts all show that this check or order by appellant on the Jourdanton bank was not to be paid out of his personal individual funds even if he had them in the bank. The letter he wrote to Lowe, copied above, together with all the other facts and circumstances, clearly show that he drew this check for the thousand dollars which was arranged to be raised and paid to him by Lowe for the purchase of lumber for Lowe and that it was, as intended and requested by him, so raised and paid by Lowe out of Lowe's money and was not intended to be raised or drawn against his (appellant's) individual account.

There is a complaint by appellant to the prejudice of one of the jurors against him, shown by the affidavit of an outside party, which is attached to and made a part of the motion for new trial. The judgment of the court thereon specifically states that in hearing said motion, the court also heard the evidence thereon submitted, and overruled the same. What this evidence was, is in no way disclosed by the judgment or the record. This being the case we must presume, which we do, that the court made an investigation of it at the time he heard the motion, heard the evidence thereon and that appellant's contention was not sustained.

We have considered all of appellant's complaints. None of them show reversible error. It is useless to take up and discuss them separately. The judgment is affirmed.

*Affirmed.*

[Rehearing denied February 26, 1913.—Reporter.]