## W. L. McDANIEL v. THE STATE.

### No. 4047.    Decided May 3, 1916.

### Rehearing denied May 31, 1916.

**1.—Embezzlement—Transcript—Statutes Construed.**

Under Article 931, Code of Criminal Procedure, it is the duty of the clerk below to forward the transcript to this court, and there is no duty, as in civil cases, devolving upon the defendant or his counsel; the clerk alone being responsible for any delay in filing the transcript.

**2.—Same—Continuance—Third Application.**

Where appellant's counsel conceded that there was no error in overruling defendant's third application for a continuance, the matter need not be reviewed on appeal.

**3.—Same—Venue—Jurisdiction—Statutes Construed.**

Under Article 251, Code Criminal Procedure, one may be charged, tried and convicted for embezzlement in the county in which he came into possession of the property, although he embezzled the same in another county.    Following Cohen v. State, 20 Texas Crim. App., 224, and other cases.

**4.—Same—Sufficiency of the Evidence—Embezzlement.**

Where defendant contended that the title of the alleged embezzled property passed to him and was sold to him on credit, but the testimony for the State showed that the title was in no event to pass to the defendant, but that he gained the possession of said property as agent to sell it on commission, and the court submitted the issue to the jury in a proper charge, and the jurors found the defendant guilty of embezzlement, there was no reversible error.

**5.—Same—Receiving Property—Embezzlement—Venue—Bill of Lading.**

Where, upon trial of embezzlement of certain live stock, the State's testimony showed that the bill of lading by which said stock were shipped, was delivered to the defendant in the county of the prosecution, and that he used the same as a pass on the railroad to the point of shipment, this constituted a receiving or delivering of said stock to the defendant; he being a member of the firm to whom the stock were consigned and paying the freight thereon.    Following Cohen v. State, 20 Texas Crim. App., 224.

**6.—Same—Evidence—Other Transactions—Intent.**

Where, upon trial of embezzlement of certain live stock belonging to two different parties, defendant contended that he sold the animals under an honest

belief that he had the right to do so, there was no error in admitting testimony
as to what he did with any of the other animals he received at the same time and
place to show his fraudulent intent, the same being properly limited in the court's
charge. Following Long v. State, 11 Texas Crim. App., 381, and other cases.

Appeal from the District Court of Coleman. Tried below before the
Hon. Jno. W. Goodwin, judge.

Appeal from a conviction of embezzlement of horses; penalty, two
years imprisonment in the penitentiary.

The opinion states the case.

*J. B. Bisland,* for appellant.

*C. C. McDonald,* Assistant Attorney General, *Critz & Woodard,* for
the State.—On question of other transactions: Kaufman v. State, 159
S. W. Rep., 58; Currington v. State, 161 S. W. Rep., 478; Bedford v.
State, 170 S. W. Rep., 727.

On question of venue: Cohen v. State, 20 Texas Crim. App., 224,
and cases cited in opinion.

HARPER, JUDGE.—Appellant was convicted of embezzlement, and
his punishment assessed at two years confinement in the State peni-
tentiary.

The State has moved to dismiss the appeal because of the delay in
filing the transcript in this court. Article 931, Code of Criminal Pro-
cedure, makes it the duty of the clerk of the court to forward the
transcript to this court, and there is no duty, as in civil cases, devolv-
ing upon defendant or his counsel. If the clerk relied on appellant's
attorneys to forward the transcript, he had no right to do so under
the law. It being the duty of the various clerks of the different courts
to promptly forward the transcripts to this court, under the circum-
stances here shown we do not feel we are authorized to dismiss the
case from the docket.

Appellant's counsel in their argument in this court, conceded that,
viewed in the light of the hearing had on the motion for new trial,
and the court's qualification of the bill, there was no error in overruling
the third application for a continuance, therefore we will not discuss
that bill.

In the presentation of the case to this court reliance seemed to be
chiefly placed in the proposition raised in various ways, that the Dis-
trict Court of Coleman County had no jurisdiction over the offense—
that appellant came into possession of the property in Brazoria County,
and if he embezzled the property it was in that county. There is no
question in this case the embezzlement took place in Brazoria County,
if under the evidence appellant was guilty of embezzling the property,
but article 251 of the Code of Criminal Procedure provides that one
charged with embezzlement may be prosecuted in the county in which
he came into possession of the property. Cohen v. State, 20 Texas Crim.

App., 224; Brown v. State, 23 Texas Crim. App., 214; Burk v. State, 50 Texas Crim. Rep., 185; Cole v. State, 16 Texas Crim. App., 461; O'Marrow v. State, 66 Texas Crim. Rep., 416, 147 S. W. Rep., 252; Poteet v. State, 69 Texas Crim. Rep., 322, 153 S. W. Rep., 863.

Appellant's contention is that he did not receive the property in Coleman County, but came into possession of it in Brazoria County, and if his contention is correct, Coleman County would not have venue of this offense. The evidence shows, without controversy, appellant, who lived in Brazoria County, and Weldon Winn, who lived in Coleman County, formed a partnership for the growing and sale of hogs. Mr. Winn shipped the hogs from Coleman County to appellant in Brazoria County, where the business was carried on under the name of Winn-McDaniel Hog Company at Alvin, Texas. During the time of the continuance of this partnership Mr. Winn had a jack, stallion and some other horses he desired to sell, and wrote appellant in regard to selling the stock for him. After correspondence, appellant went to Coleman County to see the stock, and while there the trade was made whereby the stock were to be delivered to appellant in either one county or the other,—the contentions varying; also the terms upon which appellant was to receive the stock. Appellant's contention is that the stock were sold to him by Winn at a named price, wholly on a credit, and were to be delivered by Winn to him in Brazoria County. Mr. Winn's contention is that the stock were delivered to appellant in Coleman County as his agent, appellant to pay the freight on the stock, and to receive as compensation for his services all sums for which he should sell the stock over and above a named price. If the title to the stock passed to appellant, he would not be guilty of embezzlement, but the testimony offered by the State would show that the title was in no event to pass to appellant, and he came into possession of the stock as agent, to sell on commission. This issue was submitted to the jury, the court instructing the jury: "You are instructed in this case that if you believe from the evidence that the defendant bought the stock in controversy from Welton Winn, or have a reasonable doubt thereof, you will acquit the defendant." In bringing in a verdict of guilty, the jury necessarily found appellant did not purchase the stock and there is evidence in the record authorizing them to so find, and find that appellant was acting as agent in handling the stock. On the issue of whether or not he received the stock in Coleman County, the evidence for the State and defendant is conflicting. Appellant testified that whether he purchased the stock or received them as agent for the owner, the owner was to deliver the stock to him at Alvin, in Brazoria County. He admits he paid the freight charges, but says he was to be reimbursed by Mr. Winn. The State's testimony is that after looking at the stock, appellant went to Santa Anna and found out what the freight charges would be; that he agreed to take the stock and sell them at prices named by the owners, he to receive all sums over the amounts named to reimburse himself in the freight charges paid, and as pay for his services. All the parties were aicrg when the stock

were driven from the range to Santa Anna to be loaded on the cars. The State's testimony is that appellant assisted and superintended the loading of the stock. Appellant's contention is that Mr. Winn and his employees loaded the stock, and he had nothing to do with it. While there is some conflict, yet it may be said to be shown that Mr. Winn went to the agent and secured the bill of lading, it reading that Weldon Winn was the consignor, and the Winn-McDaniel Hog Company consignee. It is shown beyond question that the bill of lading was delivered to appellant at Santa Anna in Coleman County. He so testified, and that he used it as a pass on the railroad back to Alvin. Did the delivery of the bill of lading to appellant constitute a receiving or delivering of the stock to him? He was a member of the firm to whom the stock were consigned, and from the moment he came into possession of the bill of lading he came into possession of the stock. If the stock had been injured or killed in the railroad yards he could have maintained suit on the bill of lading, it having been delivered. Appellant contends that a delivery of the bill of lading did not constitute a receiving of the stock by him, although he admits the freight charges were to be paid by him, but this court has held that such delivery was a receiving of the property by him. In the case of Cohen v. State, 20 Texas Crim. App., 224, this identical question was passed on by this court in a well considered opinion by Judge White In that case Cohen had never had the goods in his manual possession, but the goods were placed on the train by his principal, and the check therefor delivered to him in Galveston. The court said:

"It is insisted that if any offense was committed by appellant it was not committed in Galveston County, and that hence the Criminal District Court of said county had no jurisdiction to try and determine the same. The position assumed is that the goods were not actually delivered by the firm to defendant, and that they did not come into his possession as agent in Galveston County; that the delivery and possession in said county was only constructive, if a delivery to him of the checks for the trunks at Luling, their destination, could in any manner be called a delivery and possession of the property; that Luling was the point in fact at which the trunks were to be delivered and his possession and agency to commence.

"Upon this point the learned trial judge instructed the jury: 'If the property was actually delivered into his possession, or if it was shipped by his direction or with his knowledge and approval to another point by rail, where the defendant himself in his agency and employment was going, and checks taken therefor and delivered to him in Galveston by virtue of which defendant controlled the possession of the property, it is alike in legal effect, and no further act was necessary to make complete in him the possession and authority to control the property for the purposes of his agency and employment,' etc.

"This was a correct statement of the law of the case. There can be no question in our opinion, that defendant's possession and control of the goods was complete, under the circumstances stated, in Galveston

County. By selling the checks for the trunks to a third party in Galveston he certainly could have transferred the title and right to said third party to receive and demand possession of them at Luling; and we imagine that the checks would have entitled him to demand possession of the trunks in Galveston before they were shipped to Luling. We are of opinion the venue of the offense was properly laid in Galveston County. The property came into his possession in Galveston County as agent of the firm."

So in this case when the bill of lading was delivered to him he was the consignee named in the bill; he came into possession of the animals and Coleman County had venue of the case. For other authorities so holding see Branch's Penal Code, vol. 2, p. 1408.

We have discussed the case as though appellant received the two horses, which he is charged to have embezzled in this indictment, from Mr. Winn, as that was his contention. The State's case, though is that appellant received the two animals from W. L. Swann, under an agency to dispose of them for Mr. Swann. Mr. Swann and Mr. Winn both so testify, while appellant alone contends that Winn bought the animals from Swann and let him have them. This issue was also submitted to the jury, and they found against appellant.

Appellant objected to any testimony as to what he did with any of the other animals he received at the same time and place. The question was in this case as to whether appellant had any criminal intent in delivering the animals received from Swann to John M. Moore in payment of his (appellant's) debt to King-Heins Lumber Company. Appellant was contending that he sold the horses under an honest belief he had the right to do so, with no intent to defraud Swann; that he had sold other horses received at the same time and place and under the same circumstances, and had appropriated the money and property received to his own use and benefit was admissible as tending to show his intent in the transaction charged, and the testimony was so limited in the court's charge. Long v. State, 11 Texas Crim. App., 381; McCall v. State, 14 Texas Crim. App., 362; Harwell v. State, 22 Texas Crim. App., 251; Kelly v. State, 31 Texas Crim. Rep., 211; Felder v. State, 40 Texas Crim. Rep., 184; Stanfield v. State, 43 Texas Crim. Rep., 10; Lynne v. State, 53 Texas Crim. Rep., 375.

There are other questions in the record, but they are not discussed in the brief filed by appellant's counsel, nor in his oral argument before this court. We have reviewed each of them, however, and hold that none of them present error.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied May 31, 1916.—Reporter.]